# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1131

**STACEY SCHOEFFLER**

**VERSUS**

**ECOLAB, INC.**

************

**APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 09-07043
HONORABLE SAM LOWERY,
WORKERS' COMPENSTATION JUDGE**

************

**J. DAVID PAINTER
JUDGE**

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and J. David Painter, Judges.

**AFFIRMED.**

Kevin L. Camel
Jason R. Bell
723 Broad Street
Lake Charles, LA 70601
COUNSEL FOR PLAINTIFF/APPELLANT:
    Stacey Schoeffler

Elizabeth Heinen
700 St. John Street, Suite 401
Lafayette, LA 70501
COUNSEL FOR DEFENDANT/APPELLEE:
    Ecolab, Inc.

**PAINTER, Judge**

Claimant, Stacey Schoeffler, appeals the judgment of the Workers' Compensation judge (WCJ) that he is not entitled to benefits arising out of an alleged accident or accidents which occurred while he was employed by Ecolab, Inc.

## FACTS

Claimant was employed by Ecolab. from February 1990 through May 2009. He worked first as a service technician doing pest control for commercial establishments. After a time, he was promoted to service supervisor and later to district manager. As such, he supervised about ten technicians and filled vacant routes himself. He alleges that in March 2008, while filling a vacant route, he injured his lower back while doing a pest control treatment at Delta Downs Casino in Vinton, Louisiana. He reported the accident to the human resources office at Ecolab and continued to work both as district manager and as a fill-in technician. In November 2008, again at Delta Downs Casino, Claimant again injured his back and again reported the incident to human resources. He never missed any work as a result of either accident but continued to work until he was terminated in May 2009.

At the hearing, Claimant testified that his supervisor told him he was being terminated due to failure to timely file his monthly reports. However, he felt that he was terminated due to his health problems and his refusal to accept a demotion to service technician. After being terminated, he began his own pest control business. He worked many fewer accounts, due, at least partially, to his physical limitations.

In August 2009, Claimant filed a disputed claim for compensation seeking supplemental earnings benefits and medical benefits. A hearing was

held on February 14, 2011. The WCJ, in oral reasons for judgment, found that Claimant had not proven that either the March or the November 2008 accident caused his current condition, either by medical evidence or by his own uncontradicted testimony. Claimant appeals.

## DISCUSSION

The WCJ, in his oral reasons for judgment explained his decision as follows:

> Both of these alleged accidents were unwitnessed. And, of course, in such cases, the Court can accept as true the testimony of the claimant, absent any circumstances casting suspicion on the reliability of that testimony.

> The scenario Mr. Schoeffler presents to the court does, in and of itself, evoke, if not suspicion, then at least enough skepticism to warrant careful examination of the facts here. To readily accept that one person might have two disabling accidents, both of which were private affairs, requires a challenge to belief, but the situation is not so far-fetched to be dismissed out of hand. But Mr. Schoeffler does seem to add a new depth and dimension to the term "coincidence".

> He asks the Court to believe that an employee working in dozens and dozens of buildings in a territory stretching from New Orleans to the Texas border had two separate accidents affecting the same part of his body and both occurring in the same city and in the same casino just months apart.

> Now, it's fair to say that this sequence of events lies a good ways outside of the accepted boundaries of what is generally considered to be a conventional workers' compensation scenario. That's not to say it's untrue; however, Mr. Schoeffler's rather unique story, in order to be accepted as either viable or accurate, needs to be accompanied by some substantial proof, buttressed by compelling medical evidence and discernibly credible testimony.

> Now, while the perceived credibility of a claimant at trial is no doubt one of the least reliable evaluators in determining the validity of a workers' compensation claim, in situations involving unwitnessed accidents, credibility is simply essential. Now, it's not at all uncommon for an injured worker to have less than perfect recall as to the exact circumstances surrounding or following an accident. And the jurisprudence makes allowances for that particular human failing. And it's not

2

unheard of for a claimant, under intense, pointed questioning by an experienced defense attorney to give answers that are at some variance with the testimony given later on the stand at trial.

But that having been said, a claimant still must establish more than the mere possibility that a work event produced disability.

The primary question here is, "did either or both of these incidents result from Mr. Schoeffler's being disabled to the point where he was unable to engage in any employment or self-employment?" The answer, both the live testimony and otherwise, indicates that he never missed work or a paycheck for that matter after either accident. Rather, he was fired, not for flagging physical prowess, but for what he called code of conduct issues.

I gather from his testimony that he did not provide the company's headquarters with standard reports that were an essential part of his managerial duties. There was no evidence at all to suggest that his employer fired him in order to dodge a workers' compensation claim. It appears to be a straight out termination for cause.

After he was fired, he started his own company, doing precisely the same type of work that he did for Ecolab. The term "temporary total disability" does not seem to be a particularly apt descriptor for this particular scenario.

I suppose, in an expansive moment, one could consider that his November 17 incident was an exacerbation of his earlier March 10th injury, redefining his cause as a "developing injury". But that's a leap even Mr. Schoeffler cannot make. He referred to the November injury as a quote, "one day flare-up" of the earlier accident. The term "flare-up" is not a technical medical term; but if it were, I'm pretty sure it would not be used interchangeably with the term "subsequent accident" or even "exacerbation".

And even if it were, the fact remains he just didn't miss work.

I listened carefully at length to his testimony and reread the transcript. Try as I might, I cannot meaningfully juxtapose his live testimony with the deposition he gave earlier, even allowing for memory lapses. And the medical records don't seem to mesh either with the testimony or the transcript.

I just do not see how he could have possibly not remembered, when asked directly, that he had been regularly,

faithfully taking painkillers, Hydrocodone to be exact, for many years before the accident.

And, looking at the medical records, it occurs to me that Mr. Schoeffler probably was not at all times stringently accurate with the information he gave his treating and examining physicians. At one time or the other, he gave more than one version of practically everything he said happened to him.

But on a more fundamental basis, I am hard-pressed to understand his rationale for asking for indemnity payments when he himself testified he didn't miss any work. And even after he was fired, he kept on working doing the same job that he says he was disabled from.

Putting all this data and documents into some coherent package, it seems that Mr. Schoeffler was injured to some degree or another in March of 2008 and more than likely had a flare-up in November. And if that's the case, and it certainly looks to be, the petition for medical benefits have simply prescribed.

I am not without sympathy for this man. I do not think he is overtly dishonest. He is not engaged in some nefarious attempt to illegally obtain workers' compensation benefits.

He sounds more confused than conniving. He has obviously many serious physical problems. But he has not proven that either the March 10, 2008, or the November 17, 2008 incident caused his current condition, either by medical evidence or by his own uncontradicted testimony.

The statutory admonition to liberally construe workers' compensation law in favor of an injured worker simply cannot be stretched wide enough for the most sympathetic, fair-minded person to find merit in his claim.

Accordingly, the claim is dismissed in its entirety.

As this court stated in *Russell v. H & H Metal Contractors, Inc.*, 11-27, p. 9 (La.App. 3 Cir. 6/1/11) 65 So.3d 806, 814:

[A] workers' compensation judge's factual findings, including the credibility of the employee's testimony and whether the employee met his burden of proof, are not to be disturbed on appeal absent manifest error. *Rivers v. Bo Ezernack Hauling Contractor, Inc.*, 09-991 (La.App. 3 Cir. 3/10/10), 32 So.3d 1091, *writ denied*, 10-807 (La.6/4/10), 38 So.3d 309.

4

The WCJ's decision herein is based primarily on a credibility evaluation. After reviewing the record herein, we find that it supports his evaluation of Claimant's credibility. Claimant gave different answers in the deposition, at the hearing, and even within the space of the hearing. Based on the records of the treating physicians, he apparently gave different information to each of his doctors. Further, while Claimant asserts that he is entitled to medical benefits, including payment for an MRI ordered by Dr. Randy Miller, we cannot find sufficient support in the medical records to establish a link between the services and the injuries sustained. As a result, we cannot say that the WCJ erred manifestly in finding that Claimant did not carry his burden of proof herein. Accordingly, the judgment of the WCJ is affirmed.

## CONCLUSION

For these reasons, the judgment of the WCJ dismissing Claimant's action is affirmed. Costs of this appeal are assessed to Claimant, Stacey Schoeffler.

**AFFIRMED.**